### WILLIAM BUSH v. HENRY S. McCOMB.

Communications between client and counsel are privileged and confidential communications, and cannot be disclosed, even for the purposes of the administration of justice. But the rule is based, not so much on the ground of privilege to the client, or the counsel, as the danger and impolicy of allowing them to be disclosed, even for such purposes.

The object of it seems plainly to require that the entire professional intercourse between attorney and client, whatever it may have been, shall be protected by profound secrecy. And this protection given by the law to such communications, does not cease with the termination of the suit, or other business in which they were made, nor on the change of such attorney for another, nor by any other change of relations between them ; nor by the death of the client. The seal of the law once fixed upon them, remains forever unless removed by the party himself in whose favor they were there placed.

After counsel has informed the court that he has closed the examination of his witnesses in a case, and the opposite counsel has declined to call any, he will not be allowed to examine another, although he has just learnt of him and the materiality of his testimony as a witness for the first time after such announcement by him to the court, without the consent of the counsel on the other side.

An action of debt will lie by one administrator against another to recover his half of the commissions allowed by the Register on the several accounts passed before him on the estate of their decedent.

THIS was an action of debt by William Bush against Henry S. McComb, who were co-administrators on the

estate of Charles Bush, deceased, to which the defendant in addition to *nil debet* pleaded that they were such co-administrators on the 1st day of September, 1856, at which time there remained in their hands unsold, certain vessel property of the deceased, which in the appraisement of his goods and chattels, had been valued at $8600, but that the market value of them had, between the time of the appraisement, which was on the 6th day of December, 1855, and the day and year aforesaid, depreciated to the amount of three thousand dollars, and in consequence of their omission to sell the same within the time prescribed by law, they had become jointly liable to the estate of the deceased for the loss so incurred; and that thereupon in consideration that the defendant would accept the same and account to the said estate for their appraised value, the plaintiff on the day and year first above mentioned, promised to indemnify him out of his share of such commissions as might thereafter be allowed them as such co-administrators, to the amount of one-half of the aforesaid depreciation in the market value of them; and that in consideration of that promise, the defendant on the day and year last referred to, accepted an assignment of the vessels and duly accounted to the estate of the said deceased for the appraised value thereof. There were several accounts passed by them afterward on the estate, upon which the aggregate amount of the commissions allowed them, was $4,507 57; and this action was now brought by the plaintiff to recover from the defendant his portion, or the one-half of them.

T. F. Bayard, Esquire, was called and sworn as a witness on behalf of the plaintiff, and stated that he had been of counsel for the parties as the administrators of the deceased, and had frequently been consulted by each of them in regard to their business previous to the settlement of the estate. During his examination he was asked the question what statement, or declarations had been made to him by the defendant on a certain occasion referred to after the settlement of the estate and he had

ceased to be the counsel of either of the parties, in regard to the matter now in litigation between him and the plaintiff.

*Gordon*, for the defendant, objected to the admissibility of the evidence because the object of the inquiry was to introduce confidential communications made by a party to his legal counsel, and which, as such, were privileged from disclosure by him; for it was against sound policy, and might be objected to by counsel on either side.

*Patterson*, for the plaintiff: In the case of *Johnson v. The Farmers Bank*, 1 *Harr.* 118, such an objection was made, but was overruled and the testimony was admitted. But in this case the statement alluded to was made by the defendant to the witness after the relation of counsel and client had ceased between them, and consequently there was no ground whatever for the objection that it was a confidential communication of the character referred to, and it was therefore not privileged from disclosure for any such reason. Besides the action was against the defendant individually, and not as an administrator of the deceased, in which character alone the witness had stood in a professional relation to him, although even that had terminated before the statement referred to had been made to him.

*The Court,* (*Gilpin,* C. J., absent:) Since the case cited from 1 *Harr.* 118, the principle of exclusion in such cases had been more distinctly ruled and established than it was at that time. The rule in regard to it, as now understood and established both in this country and England, is based, not so much on the ground of privilege to either the counsel, or the client, as on the ground of the danger and impolicy of allowing the confidential communications of any one to his professional adviser, to be disclosed and made public, even for the purposes of the administration of justice; and the object of it seems plainly to require

that the entire professional intercourse between attorney and client, whatever it may have been, shall be protected by profound secrecy; and this protection given by the law to such communications, does not cease with the termination of the suit, or other business in which they were made; nor is it affected by the party's ceasing to employ such attorney and retaining another; nor by any other change of relations between them; nor by the death of the client.    The seal of the law once fixed upon them, remains forever, unless removed by the party himself in whose favor it was there placed. 1 *Greenl. Ev. secs.* 240, 243.    The evidence was therefore excluded.

*Patterson*, then informed the court that he had closed the testimony for the plaintiff, and *Gordon* stated that he had none to offer for the defendant, when the court adjourned; but on its opening again in the afternoon, *Patterson* asked leave to call and examine a witness of whose existence, as well as of the materiality of his testimony, he had for the first time learnt since the adjournment of the court, and particularly urged as a reason why the leave should be granted, that the counsel for the defendant had called no witness for the defence.    But *Gordon* objected and the Court refused the leave.

*Gordon*, for the defendant, then opened the case, and contended that no action at law would lie in the case, and if there was any remedy for the plaintiff under the facts and circumstances proved, it was in chancery.    2 *Saund. Pl. & Ev.* 364, 371, 373.

*Patterson*, for the plaintiff: Either an action of indebitatus assumpsit, or of debt for money had and received would lie in such a case. 1 *Ch. Pl.* 356, 99.

*The Court, Wootten J.*, charged the jury, that if the defendant, as one of the administrators, had received the commissions allowed them in the settlement of the estate

of the deceased, to the half of which, the plaintiff was entitled as the other, or his co-administrator, the action of debt would lie and the plaintiff could recover in it one-half of the amount of them with interest from the time they were due and payable to him, which would· be from the date of the passage, or allowance of each of the several accounts before the Register of Wills, as no evidence had been produced to sustain the special defence pleaded by the defendant in the action.